Alfred COONEY, Administrator of the
Estate of Francis X. Hunter,
Deceased

v.

SUN SHIPBUILDING & DRYDOCK
COMPANY et al.

No. 36195.

United States District Court
E. D. Pennsylvania.

July 26, 1968.

Sidney J. Smolinsky of Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Joseph Reiter, Asst. U. S. Atty., Eastern Dist. of Pa., Louis Weiner, Regional Atty., U. S. Dept. of Labor, Philadelphia. Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

In this civil suit for damages arising out of the accidental death of plaintiff's decedent, an employee of the above named defendant Sun Shipbuilding and Drydock Company, on July 31, 1963, as the result of a fall from a ship located at the defendant's drydock, the plaintiff seeks by the present motion to compel production of a report of the accident prepared immediately after its occurrence by investigators representing the Office of Occupational Safety, Bureau of Labor Standards, U. S. Department of Labor. The report is purported to consist of statements of witnesses, factual findings made by the investigators, and their conclusions as to the causes of the accident.

On September 19, 1967, pursuant to Rule 45(d), F.R.Civ.P., the plaintiff served subpoenas upon Warren Wright, Area Supervisor of the Office of Occupational Safety, and Oscar DiSilvestro, Senior Maritime Officer for that agency. The subpoena served upon Mr. Wright requested that the witness bring with him:

"1. Report of findings pertaining to the investigation into the death of Francis X. Hunter, which occurred on or about July 31, 1963, at Sun Shipbuilding and Drydock Company.

"2. Any physical evidence including, but not limited to photographs taken of or from the scene where the accident occurred."

Pursuant to the subpoena Messrs. Wright and DiSilvestro appeared at the law office of plaintiff's counsel and were deposed. But, the witnesses did not bring with them any of the documents requested by the subpoena. Counsel for the witnesses advised counsel for the plaintiff that the witnesses would not be permitted to produce the requested documents on the ground that the accident report was confidential. No motion to quash the subpoena was filed, nor did the Secretary of Labor assert any claim of privilege.

The witnesses were permitted to testify as to what they personally did and observed while investigating the accident, but only on the strength of their personal recollections and without the opportunity to refresh their recollections by referring to their written reports. Each question which sought to elicit from the witnesses an opinion or conclusion as to the causes of the accident, or what eyewitnesses to the accident told them was objected to by their counsel, and the witnesses were directed not to answer. The plaintiff then filed his present motion to compel production.

In support of his motion to compel production the plaintiff argues that the government has not met its burden of showing that its refusal to produce the documents is supported by any statute or administrative directive, and that the report is "necessary, material and relevant to a full presentation of the plaintiff's case in court, and non-production will impair the plaintiff's ability to meet his burden of proof."

The United States Attorney for the Eastern District of Pennsylvania has filed several briefs in opposition to the plaintiff's motion. The briefs disclaim any interest on the part of the government in the substantive issues involved in the civil suit, but defends the refusal of the Department of Labor officials to produce the subpoenaed documents.

The government's argument has, essentially, two bases. First, it argues that the MAR-6 Investigator's Report of an Accident "was a report prepared for law enforcement purposes, and for that reason is exempt from the disclosure provisions of the 'Freedom of Information Act'," P.L. 89–487, 80 Stat. 250 (revising Section 3 of the Administrative Procedure Act, 5 U.S.C. § 1002; which was thereafter codified by P.L. 90–23, 81 Stat. 54, to amend Section 552 of Title 5, U.S.C.), and the revised disclosure regulations of the Department of Labor, 29 C.F.R. § 70(3) (g), 32 Fed.Reg. pp. 11033–34, July 28, 1967. Secondly, it argues that the plaintiff has failed to make the proper showing of good cause required to compel production under Rule 45 as well as under Rule 34 F.R.Civ.P.

### I. *The Public Information Act.*

In determining the validity of the government's first argument it would be well to consider the background of the amended Section 3 of the A.P.A., the abuses it was intended to correct, and the changes in the existing law which it effected.

House Report No. 1497 provides the only reported legislative history of Bill S. 1160, which was reported out of the House Committee on Government Operations unamended and became the amended Section 3 of the Administrative Procedure Act. According to that Report, the bill was intended to correct certain administrative abuses which were prevalent under the original Section 3. Although that Section was also characterized as the "Public Information" section of the A.P.A., in the words of the committee:

> "Section 3 of the Administrative Procedure Act (5 U.S.C. 1002), though titled 'Public Information' and clearly intended for that purpose, has been used as an authority for withholding, rather than disclosing information. * * * The present statute therefore, is not in any realistic sense a public information statute. * * *"

> "It is vital to our way of life to reach a workable balance between the right of the public to know and the need of the government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy. * * * This bill strikes a balance considering all these interests." [1]

Accordingly, the bill replaced the broad, undefined phrases of the original Section 3, which regulated the circumstances of disclosure, ("in the public interest", "for good cause found", etc.) with a section which requires the availability to any member of the public of all of the agency records described in its provisions, except those involving matters falling within nine stated exemptive provisions. And, under the new statute the burden is on the government to sustain any action of denying a request for access to its records (5 U.S.C. § 552(a) (3).

The government purports to find its justification in one of the exemptive provisions—§ 552(b) (7)—and the regulations of the Department of Labor promulgated incident thereto by the Secretary of Labor. Subsection (b) (7) provides:

> "Exemptions.—The provisions of this section [regarding disclosure] shall not be applicable to matters that are * * * (7) investigatory files compiled for law enforcement purposes, except to the extent available by law to a private party * * *."

29 C.F.R. Part 70, the Department of Labor regulations implementing the revised Section 3, provides:

> "The officer authorized to disclose a document as provided in § 70.4(b) may decline to disclose matters that are * * * (g) investigatory files compiled for law enforcement purposes." (Fed.Reg., Vol. 32, No. 145, July 28, 1967)

Thus, the initial issues for decision are: whether the document in question is part of an "investigatory fil[e] compiled

---

1. 1966 U.S.Code Congressional and Administrative News pp. 2421–2423.

for law enforcement purposes"; and if it is, whether by that fact alone it is to be accorded complete immunity from disclosure.

Under Public Law 85–742, 72 Stat. 835, which amends Section 41 of the Longshoremen's and Harbor Workers' Compensation Act, as amended (44 Stat. 1444, 33 U.S.C. § 941), the Secretary of Labor has the responsibility for promulgating rules and regulations for the guidance of every employer within the Federal maritime jurisdiction on the navigable waters of the United States (including drydocks), in providing safe equipment and working conditions for their employees. These regulations are set forth in 29 C.F.R. §§ 1501–1509, as revised, January 1967. The statute further provides that:

"(c) The Secretary or his authorized representative may inspect such places of employment, question such employees, and investigate such conditions, practices or matters in connection with employment subject to this chapter as he may deem appropriate to determine whether any person has violated any provisions of this section, or any rule or regulation issued thereunder, or which may aid in the enforcement of provisions of this section.

"(e) The United States district courts * * * shall have jurisdiction for cause shown, in any action brought by the Secretary, * * * to restrain violations of this section or of any rule, regulation or order of the Secretary adopted to carry out the provisions of this section."

The government alleges, and it is not controverted by the plaintiff, that the Office of Occupational Safety is the Secretary's representative in making the referred to investigations. Therefore, I conclude that the accident report prepared by Safety Maritime Officers from that office is an investigatory file compiled for law enforcement purposes. But, is this the type of law enforcement contemplated by the act? According to House Report 1497, "[t]his exemption covers investigatory files related to the enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related government litigation and adjudicative proceedings." The answer to that question then is yes. But perhaps a more relevant inquiry is not, for what purpose were the files originally compiled; but rather, whether they retain that characterization over four and one half years after their compilation? It is not argued by the government that there currently is any investigation under way, or that there is contemplated any law enforcement proceedings against the defendant as a result of the accident underlying the plaintiff's suit. Nor is it alleged that the information originally gathered by officials of the Office of Occupational Safety ever culminated in any proceedings against the defendant. The question then arises whether files once classified "investigatory files" may forever after retain that characterization so as to be immune from disclosure under the statute.

 According to an analysis by the Attorney General of the United States of the nature and scope of the exemption:

"The effect of the language in the exemption (7), on the other hand seems to be to confirm the availability to litigants of documents from investigatory files to the extent to which Congress and the courts have made them available to such litigants * *." In addition, the House report makes clear that litigants are not to obtain special benefit from this provision, stating that, "S. 1160 is not intended to give a private party, indirectly, any earlier or greater access to investigatory files that he would have directly, in such litigation or proceedings." (House Report, 11).

Two things are clear from the above analysis and that of the House Report to which it refers. First, a primary purpose of the exemptive provision in question is to avoid a *premature* disclosure of an agency's case when engaged in

law enforcement activities. Thus, under the subsection, files or portions thereof, need not be disclosed during the investigative stages of a contemplated litigation or enforcement proceeding; and statements of witnesses need not be disclosed prior to the time that these witnesses have testified in the formal proceedings. Second, by its terms and tenor, the statute creates no new exemption for agency files; in the several exemptive provisions it merely recognizes and codifies the existing judicially and congressionally created exemptions.

The first purpose is evidenced in Barceloneta Shoe Corp. v. Raymond J. Compton, 271 F.Supp. 591 (D.Puerto Rico; 1967), and Clement Brothers Co., Inc. v. NLRB, 282 F.Supp. 540 (N.D.Ga. 1968) cases relied on by the government in support of its position, and the only reported decisions construing the new Public Information Section of the A.P.A. In both cases the courts sustained NLRB objections to disclosing to the plaintiffs statements of persons interviewed by Board investigators in connection with the investigation of unfair labor practice charges against the plaintiffs filed with the NLRB. In the words of the court in *Barceloneta:*

"I conclude that subsection 3(e) (7) of the new Act grants the Board an exemption from disclosure requirements with respect to its investigatory file materials in this type of proceedings. I also conclude that there is no law within the meaning of subsection 3(e) (7) which requires the production of said materials *prior* to the holding of the Board's hearing. In the Jencks Act, 18 U.S.C. 3500 Congress indicated that criminal law enforcement agencies of the government are not required to produce the statements of witnesses obtained during the investigation of alleged criminal violations *prior* to the trial of the accused. Congress intended that said statements would be available to the accused during the trial but only after the witness has given direct testimony against him. To me it is inconceivable that by the new Act Congress intended to give private parties—employers, unions or employees—charged with the violation of federal regulatory statutes any greater right to inspect investigatory file material than has been granted to persons accused of violating Federal criminal law. (Emphasis added)

The above holding was endorsed in *Clement Brothers,* supra.

I concur with the holding of the above cases, but only within the context in which they were rendered. For in cases in which an agency hearing or judicial litigation is impending, the situation is often rife with possibilities for a defendant to intimidate witnesses, or anticipate and avoid the government's case; thus, a rule limiting disclosure in such cases has an obvious rationality. But in a situation such as is presented here, long beyond the time in which investigation would have culminated in action, the rationale of the above-cited cases has no relevance. Therefore, in determining the validity of the government's claim of privilege for these four and one-half year old investigative files, reference must be made to prior case law to ascertain the extent to which documents of the sort in question have been denied disclosure in cases where the government was not a party to the litigation.

II. *Prior Case Law Involving Government Claims of Privilege.*

The Government's brief cites the doctrine of "executive privilege" as an important basis for the Department of Labor's policy against disclosure. It contends that the published regulations which were in effect prior to the adoption of the revised Public Information section of the A.P.A.[2] were valid under the then existing case law; and in acknowledging that subsection (b) (7) of 5 U.S.C. § 552 merely codifies the pre-

2. 29 C.F.R. § 2.9.

existing law relating to the disclosure of government documents, argues that its counterpart revised regulations are valid now. In support of this position the brief cites several cases in which courts are purported to have upheld the right of various government agencies to withhold the production of documents from their files on the basis of regulations similar to those of the Department of Labor's former regulations.[3] But I find most of the cases cited by the government to be of limited relevance to the issues here presented for several reasons.

First, unlike the old regulations under which documents in Government files could not be furnished to any person without the written consent of the Secretary or his authorized representative, the new published regulations (29 C.F.R. § 704), purport to delegate to subordinate officials the initial, and sometimes exclusive, agency determination of whether, and to what extent documents within their control are to be made available to persons. Thus, to some extent the rationale of the old cases is undermined.[4]

Second, many of the cases on executive privilege were decided on the authority of the so-called "Housekeeping Statute", 5 U.S.C. § 301, as amended, 1966 (formerly 5 U.S.C. § 22). That statute authorizes heads of agencies to prescribe regulations for the "custody, use and preservation of its records, papers and property". Of itself the statute does not authorize the withholding of departmental files. But for many years, government agencies, with the acquiescence of the courts, consistently cited the statute as the basis for regulations prohibiting subordinate officials from making records available to members of the public or for use in litigation except upon permission of the secretary or agency head.[5] However, any former presumptions as to the authority of that statute to justify the withholding of records was effectively laid to rest by the 1958 amendment to that statute, which provided:

> "This section does not authorize withholding information from the public or limiting the availability of records to the public."

Those cases cited by the government which were decided after the enactment of that amendment and upheld government claims of privilege on the authority of that statute[6], so held by merely citing the earlier precedents without considering the effect of the amendment on the continued vitality of these cases. Later cases have clearly established a trend by courts away from merely ratifying the policy reasons asserted by governmental agencies to support a claim of privilege, and have demonstrated instead a greater willingness on their parts to attempt the sometimes difficult task of reconciling agency policies against disclosure with the legitimate demands of proper judicial administration, to the end that courts may have all available information for the determination of controversies, and the agencies

---

3. Boske v. Comingore, 177 U.S. 459, 20 S. Ct. 701, 44 L.Ed. 846 (1900) ; Appeal of U. S. Securities and Exchange Commission, 226 F.2d 501 (6th Cir., 1955); Touhy v. Ragan, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) ; Hubbard v. Southern Ry. Co., 179 F.Supp. 244 (M.D. Ga.1959) ; DeLong v. Kudu, 36 Labor Cases, ¶ 65,097 (Cal.Sup.1958).

4. The rationale for the doctrine of executive privilege was expressed in one of the leading cases as follows:
 "When one considers the variety of information contained in the files of any government department and the possi-
bilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious." Touhy v. Ragan, supra, Note 3.

5. Boske v. Comingore, supra; Touhy v. Ragan, supra; Bank Line Ltd. v. United States, 163 F.2d 133 (2d Cir. 1947) ; Ex parte Sackett, 74 F.2d 922 (9th Cir. 1935) ; Appeal of SEC, supra ; Hubbard v. Southern Ry., supra.

6. Hubbard v. Southern Ry., supra; DeLong v. Kudu, supra.

not be frustrated in the effective performance of their delegated responsibilities.

 Third, a claim of executive privilege is validly made only by the head of the executive department or administrative agency involved, after actual personal consideration by that officer. United States v. Reynolds, 345 U.S. 1, 8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). In this case, there has at no point been any assertion of privilege by the Secretary of Labor.

Thus, I conclude that if the withholding of the documents in question is to be sustained, it will not be on the basis of those cases in which an almost conclusive presumption of validity has been accorded to government claims of privilege. Rather, it must be on the strength of those cases wherein the courts have weighed the competing interests asserted, and attempted to reconcile the conflicting policies involved, of: on the one hand, absolute non-disclosure of the contents of government investigative reports in the interest of furthering the effective enforcement of government safety programs by encouraging full and frank disclosure of all accident information, even by those potentially liable; and on the other hand, liberal disclosure of all relevant, non-privileged information to litigants in civil actions. There are several recent cases in which courts have undertaken such an inquiry, and have struck a balance which I believe appropriately fulfills these conflicting objectives.

In Machin v. Zuckert, 114 U.S.App. D.C. 335, 316 F.2d 336 (D.C. Cir., 1965), the plaintiff brought suit against an airplane manufacturer for injuries suffered in the crash of an Air Force plane, in which he sought by subpoena to obtain an Air Force investigative report relating to the accident. The Secretary of the Air Force declined to produce the records and moved to quash the subpoena on grounds of executive privilege.[7] The District Court granted the motion to quash, and the plaintiff appealed. On appeal, the Circuit Court affirmed the Secretary's claim of privilege as to those portions of the reports which represented statements of private parties given to government investigators, but held that the Air Force was required to make available to the plaintiff the portions of the report containing the findings of Air Force mechanics who examined the wreckage. This included opinions and conclusions as to the cause of the accident, as well as factual findings. In so holding, the court asserted, inter alia:

"We agree with the Government that when disclosure of investigative reports obtained in large part through promises of confidentiality would hamper the efficient operation of an important Government program and perhaps even, as the Secretary here claims, impair the national security by weakening a branch of the military, the reports should be considered privileged. * * * Insofar, therefore, as the subpoena sought to obtain testimony of private parties who participated in the investigation, we agree with the District Court that such information in the hands of the Government is privileged. The privilege extends to any conclusions that might be based in any fashion on such privileged information." 316 F.2d at p. 339.

Berguido v. Eastern Airlines, 317 F. 2d 628 (3rd Cir. 1963) also dealt with the question of the permissible uses of an agency accident report. Though pro-

---

7. The basis for the claim of privilege relied on by the Secretary of the Air Force is similar to that asserted in the present case: a government safety program, the success of which depends in large part on the ability of investigators to get full information—which they cannot compel —as to the cause of accidents. "Lacking the power to compel testimony, the investigators encourage frank and full cooperation by means of promises that witnesses' testimony will be used solely for the purpose of flight safety and will not be revealed to persons outside the Air Force." 316 F.2d at p. 339.

duction of the report there involved was barred by statute (The Civil Aeronautics Act, 49 U.S.C. § 1441(c)), the case is relevant because the permitted uses of the report prior to trial practically encompass the asserted purpose for which the plaintiff in this case seeks discovery of the accident report.[8]

In *Berguido, supra,* a wrongful death action against an airline resulting from an airplane crash, the defendant appealed an adverse verdict on the ground that the testimony of two CAB accident committee chairmen relating to the probable cause of the crash was barred by provisions of the Civil Aeronautics Act prohibiting the use of CAB reports of accidents or investigations in any suit arising out of such accident; or in the alternative that the testimony was inadmissible as based on hearsay. The Court of Appeals, McLaughlin, J., analyzed the statutory provision in question, and found that:

"The fundamental policy underlying § 1441(c) appears to be a compromise between the interests of those who would adopt a policy of absolute privilege in order to secure a full and frank disclosure as to probable cause and thus help prevent future accidents and the countervailing policy of making available all accident information to litigants in a civil suit." 317 F.2d at pp. 631–632.

The Court concluded that testimony as to "calculations" made by investigating engineers, as opposed to opinion testimony as to the cause or causes of the crash, did not come within the ambit of the statute hence was admissible.[9]

Though the report on which the witness's deposition testimony was based was barred by statute in *Berguido,* the policy rationale underlying that statute discerned by the Court was similar to the standard articulated by the Court in Machin v. Zuckert, supra; and the Third Circuit's ruling, though making the admissibility of information contained in the report turn on the axis of a "fact-opinion" distinction, in effect allowed disclosure of those portions of the report not obtained as a result of interviews of, or information supplied by other persons. This is consistent with the holding in Machin v. Zuckert, supra.

In Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (1960), Boeing Company, the taxpayer-litigant in a proceeding before the Tax Court, petitioned for enforcement of a subpoena *duces tecum* issued by the Tax Court demanding documents in the possession of the Renegotiation Board and relevant to a determination of the

---

8. According to the court's summary of relevant facts at trial:
"They [computations upon which expert testimony was based] were put into evidence by the testimony of Van Epps and Searle, the chairmen respectively of the Operations and Structures Committees of the Civil Aeronautics Board (CAB) team that investigated the crash. Following the policy suggested in Universal Airlines ˙v. Eastern Airlines, 88 U.S.App.D.C. 219, 188 F.2d 993 (D.C. Cir., 1951) *and encouraged by the CAB,* the depositions of the two men were taken, with all objections, except as to form, being reserved until the trial. At the trial portions of the Van Epps deposition was read * * *. The record indicates that in stating the figures, Van Epps was reading from the summary report submitted by Searle, * * * thus "refreshing his recollection" and then testifying as to what the figures were. *However, the record is also clear that evidentially Van Epps was only refreshing his recollection as to things he personally observed at the scene of the crash."* (Emphasis added) In this case the uncontroverted allegations of the plaintiff are that the witnesses were not permitted to refer to their reports for the purpose of refreshing their recollection when testifying as to their personal observation of the scene of the accident over three years previously; and thus, were unable to recall certain aspects of their investigations.

9. The Court nevertheless held the testimony to be hearsay, and its admission, reversible error, since the witness' testimony was based on calculations made by a subordinate engineer but without knowledge of the assumption on which the engineer based his calculations.

amount of excess profits taxes owed the United States by Boeing on contracts with the U. S. Air Force after the Board declined to comply with the subpoena on grounds of privilege. According to the Court:

> "[A] claim of privilege is asserted, particularly with regard to recommendations to the Board by those in concert with it. To the extent that the documents deal with recommendations as to policies which should be pursued by the Board, or recommendations as to decisions which should be reached by it, the claim of privilege is well founded. * * *

> "But the files of the Board may well contain investigatory or other factual reports by Board employees, or reports and recommendations from persons outside the Board * * *. Investigatory or factual reports not containing state or military secrets * * have not, without more, supported claims of privilege."

The Court, finding that Boeing had shown good cause therefor, ordered production of the documents so that the Court could make an in camera inspection to determine what portions of the documents were to be made available to Boeing.

There are other recent cases, not precisely on point, but consistent with the cases discussed above in narrowly limiting exercises of purported executive privilege to a degree consonant with the proper maintenance of agency responsibilities, rather than allowing sweeping claims of executive privilege. NLRB v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961); Sperandeo for and on Behalf of N.L.R.B. v. Milk Drivers & Dairy Employers Local Union No. 537, 334 F.2d 381 (10th Cir. 1964); O'Keefe v. Boeing Co., 38 F.R.D. 329 (S.D.N.Y. 1965); Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N.D.Ohio 1964).

A rationalizing element common to the cases cited and discussed above has been the Courts' refusal to require disclosure of those portions of the reports or files in issue embodying the statements of third party witnesses, but requiring the government agencies to divulge those portions of the files consisting of factual investigations by agency personnel; and in some instances, conclusions drawn therefrom as to the causes of the accident. Such an approach is applicable to the case at hand. Here also the demanded reports allegedly consist in part of interviews with private individuals, and in part, the results of independent agency observations and investigations. Barring disclosure of the former while making the latter portions available to the plaintiff would, I believe, strike a proper balance between a valid governmental policy objective, and the needs of private litigants if the plaintiff has otherwise demonstrated the validity of his demand for production by subpoena.

### III. *The Requirements of Rule 45, F.R.C.P.*

The second basis for the Government's argument against disclosure of the investigative report is its contention that the plaintiff has failed to make the showing of "good cause" necessary to compel production. In support of this contention the Government argues that Rule 45, F.R.C.P., must be read *in pari materia* with Rule 34; therefore, that the good cause showing required by Rule 34 is a prerequisite to requiring production under Rule 45 also. The Government then argues that under Alltmont v. United States, 177 F.2d 971 (3d Cir. 1951), to demonstrate the good cause necessary to support a motion for production of documents under Rule 34, a party has to show more than the fact that the documents requested are material and relevant to trial of the action; in addition, he must demonstrate some "special circumstances" which makes production of the documents necessary to the adequate presentation of his case, or their denial prejudicial to his ability to prove his case.

■ In considering the validity of the Government's argument, it is first necessary to distinguish between the *parties* to an action and *non-party* witnesses. Rule 34 applies only to parties, whereas Rule 45 permits both party and non-party witnesses to be served with subpoenas *duces tecum*. Because of this option given to parties to proceed under either Rule 34 or Rule 45 in compelling the production by opposing parties of documents at the taking of pre-trial depositions, it is generally conceded that, with respect to subpoenas to parties, Rule 45 must be construed in pari materia with Rule 34. Boeing Airplane Co. v. Coggeshall, supra; Tiedmann v. American Pigment Corp., 253 F.2d 803 (4th Cir. 1958); Joseph L. Lee, Inc. v. Margon Corp., 18 F.R.D. 390 (S.D.N.Y. 1956); United States v. 6.82 Acres of Land, 18 F.R.D. 195 (D.N.M.1955), (5 Moore's Federal Practice §§ 45.05[2] & 45.07.). Any other construction would be untenable. Since under Rule 34 a party must move the Court for an order requiring the production of documents, supported by a showing of good cause, while a *subpoena duces tecum* issues under Rule 45 as a matter of course, to require a lesser showing of cause with respect to parties would render Rule 34 irrelevant, because parties would doubtless rely on Rule 45 for the production and inspection of documents in the hands of its adversaries to the exclusion of Rule 34. It is to avoid this potential frustration of purpose that when a subpoena *duces tecum* is directed to a party and the party timely objects by filing a motion to quash the subpoena, the specific terms of Rule 34 should govern the general terms of Rule 45 in determining the reasonableness of the subpoena. Joseph L. Lee, Inc. v. Margon Corp., supra.

■ The above considerations are not relevant with respect to non-party witnesses. Rule 45 is the exclusive means whereby they can be compelled to produce documents, records, writings, etc. either at the taking of a deposition or at trial; hence, there does not exist the potential for frustration of purpose of any other Rules by construing Rule 45 according to the tenor of its terms, as exists in the case of subpoenas to parties. In addition, having no interest in the outcome of the case, arguments as to "relevancy" and "materiality" are not appropriate concerns to these witnesses. What *are* legitimate concerns in most cases are questions of burdensomeness, or expense involved in complying with the subpoena; questions which are properly raised on a motion to quash under Rule 45(b), or for modification of the subpoena pursuant to Rule 30(b). Therefore, I conclude that, ordinarily, when a subpoena *duces tecum* is issued to a person not party to the action there is no standing on his part to raise the issues of "good cause", no more so than he could raise the questions of relevancy and materiality.[10]

But here I am confronted with the cases involving claims of privilege for government files wherein even when the issue of good cause was not raised, there were present factors which made a production of the documents in question vital to the presentation of the moving party's case.[11] This "need" was the factor which was weighed in the balance against the policy considerations asserted by the government to justify a privilege from disclosure. In the present case, against the Department of Labor's policy argument and the "grab bag" of legal theories upon which it

10. Cf. Shepherd v. Castle, 20 F.R.D. 184 (W.D.Mo.1957); Joseph L. Lee, Inc. v. Margon Corp. (dicta) 18 F.R.D. 390 (S. D.N.Y.1956).

11. In Machin v. Zuckert, supra, Berquido v. Eastern Airlines, supra, and O'Keefe v. Boeing Co., supra, the accident reports or testimony sought related to airline crashes, situations in which opportunities for the parties to investigate and obtain information on their own is limited, and federal aviation investigators the sole source of information reasonably available to parties. (See e.g., Universal Airlines v. Eastern Airlines, 188 F.2d 993 (D.C.Cir. 1951).

predicates privilege, counsel for the plaintiff has submitted an affidavit by which he avers that "the report and areas of examination foreclosed by government counsel are necessary material and relevant to a full presentation of plaintiff's case in court and non-production will impair the plaintiff's ability to meet his burden of proof". Without casting aspersions upon counsel's affidavit, it can be noted that the plaintiff has obtained from the officials of the Office of Occupational Safety deposed, the names of these persons interviewed by investigators from that office after the occurrence of the accident [12]. Counsel has not alleged that he has not obtained statements from these individuals, or is for some reason unable to do so. Nor has he alleged that such statements as he obtained were obtained so long after the occurrence of the accident as to be infirm from defects of memory on the part of witnesses, or denuded of any evidentiary value when contrasted to the observations of trained experts recorded immediately after the accident. Thus, it is evident that the plaintiff has not alleged any *factual* circumstances which make production of the investigator's report necessary to the adequate presentation of his case. Therefore, weighing the plaintiff's bare averment of need, unsupported by any facts, against the government's arguments against disclosure, I conclude that, while not subject to the specific "good cause" requirements of Rule 34,[13] when seeking production of government investigatory files in an action to which the government is not a party, a party must demonstrate the circumstances which require that the report be made available to him. The plaintiff has not met this standard.

However, in addition to his request that the report be made available to him, the plaintiff contends that at the taking of the deposition of Wright and DiSilvestro, they were required by their counsel to testify from their unrefreshed recollections without the opportunity to refer to their reports or to any memoranda made in reasonable chronological proximity to their investigations four years previously. I concur with the assertion of plaintiff's counsel that faulty and sketchy testimony should not be a substitute for the full and accurate testimony, which, hopefully, would be given by the investigators if they were enabled to refer to their reports while being deposed. Accordingly, I feel it would be appropriate to order that the accident report be available to Messrs. Wright and DiSilvestro for the purpose of refreshing their recollections if they are called upon to give further depositions.

In summary, after careful consideration of the oral arguments and well-written briefs presented by both counsel for the plaintiff and the Government, I conclude that the document sought by subpoena *duces tecum* is not, by virtue of 5 U.S.C. § 552(b) (7) entitled to absolute immunity from disclosure; rather, only those portions of the report representing statements of witnesses obtained as a result of the investigation and any portions representing deliberations or recommendations by officials in the Department of Labor are exempted from disclosure by the subpoena. Those parts of the report containing the observations and factual investigations of the officials of the Office of Occupational Safety and conclusions as to the cause of the accident are conditionally denied disclosure, subject to reconsideration by

12. Plaintiff's Reply Brief on Motion To Compel Production, pp. 4, 9.

13. "The Rules * * * do not give a party an absolute right to obtain either the text or a resume of the statements which the adverse party has obtained from the persons whom he or his agents have seen. * * * [H]e must in every case make the showing of good cause required by those Rules for their production. In other words he must show that there are special circumstances in his particular case which make it essential to the preparation of his case and in the interest of justice that the statements be produced for his inspection or copying." Alltmont v. United States, 177 F. 2d 971, 978 (3d Cir. 1949).

the court if counsel for the plaintiff chooses to submit a further memorandum specifying the factual basis upon which he predicates his need for the accident report. And if the plaintiff chooses to take further depositions of these officials, deponents are to be permitted to refer to their reports for the purpose of refreshing their recollections.