**Wilma G. PILAR, Surviving Widow of Andre R. Pilar, etc., et al.**

v.

**SS HESS PETROL, etc., et al.**
**AMERADA HESS CORPORATION**

v.

**ENGELHARD MINERALS & CHEMICALS CORPORATION (two cases).**

**Ruth A. KOTOVA, Surviving Widow of Joseph A. Kotova, etc., et al.**

v.

**SS HESS PETROL, etc., et al.**
**Civ. Nos. 70–724–M, 21271–M.**

United States District Court,
D. Maryland.
May 22, 1972.

Seymour S. Lichtenstein, Elizabeth, N. J., for plaintiff Pilar.

John J. O'Connor, Jr., Baltimore, Md., for plaintiff Kotova.

David R. Owen and Parker B. Smith, Baltimore, Md., for defendants Amerada Hess Corporation, Hess Tankship Co., and Maryland Shipbuilding & Drydock Co.

Robert E. Powell, Baltimore, Md., for defendant Penniman & Browne.

Donald A. Krach, Baltimore, Md., for defendant Engelhard Minerals & Chemicals Corporation.

Louis Weiner, Philadelphia, Pa., for Department of Labor.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion and Order*

This civil suit for damages arises out of the deaths of plaintiffs' decedents, Joseph A. Kotova, an employee of the Maryland Shipbuilding & Drydock Company, and Andre R. Pilar, an employee of Engelhard Industries, Inc., when a fire occurred aboard the S. S. Hess Petrol on or about July 27, 1968. Subsequent to the incident, several compliance officers of the United States Department of Labor, Bureau of Labor Standards, Office of Occupational Safety, made investigations and conducted interviews concerning the fire for the purposes of bringing charges for any violations of the Longshoremen and Harbor Worker's Compensation Act, 33 U.S.C. § 941 et seq. These officers compiled investigatory files and reports which ultimately resulted in an action by the Department of Labor against the Maryland Shipbuilding & Drydock Company for violations of the Act.[1]

The United States Government is not a party to the present action. However, several of the compliance officers who were involved in the investigation of the SS Hess Petrol fire, Messrs. William Nolan, Jr., Byron R. Chadwick, William C. Knight III, and Robert Daley, have been subpoenaed to testify by way of deposition in this action and to produce certain statements, memoranda, documents, notes, drawings, and reports concerning their investigation of the accident.[2] In addition to the above requested materials certain of the defendants[3] have requested specifically the production of ". . . other papers or records of any description covering or referring to interviews of or conversations with one John A. Wicker regarding an accident which occurred on the SS HESS PETROL on July 27, 1968." Is is contended that the prior statements of Wicker, if any, are necessary to establish the true cause of the fire and also to show that Wicker perjured himself in making subsequent statements.

In response to the subpoenas, the United States Department of Labor has moved for a protective order. The Department of Labor has stated that it will comply willingly with the subpoenas insofar as they call for the production of so much of the record as contain the

---

1. That action, Hodgson v. Maryland Shipbuilding and Drydock Co., Civil No. 20050 (D.Md.) resulted in a consent order for an injunction on July 2, 1971, which is to remain in full force and effect up to and including July 1, 1973.

2. Subpoenas duces tecum were issued by defendants Amerada Hess Corporation and Hess Tankship Company on September 21, 1971 and by plaintiff Kotova on October 5, 1971 to each of the four compliance officers. Defendant Engelhard Minerals & Chemical Corporation gave notice to take depositions of these four officers on October 19, 1971, but apparently no subpoenas were issued pursuant to that notice.

3. Defendants Amerada Hess Corporation and Hess Tankship Company. These are the only defendants who have formally opposed the government's motion for a protective order. Any references to "defendants" in this opinion hereafter will be to them unless otherwise indicated.

physical observations of the compliance officers and their report on the facts regarding the accident as well as any diagrams and pictures of the physical location of the accident made or taken by these officers. The Department of Labor, however, seeks to protect from disclosure the identity of potential witnesses, including statements or other information obtained from them, and those parts of reports containing the conclusions, opinions and recommendations of the compliance officers or the Department. It also seeks to prevent these officers from having to testify in this private litigation. The Department of Labor has relied upon the exemptions to the Freedom of Information Act of 1967 (5 U.S.C. § 552) and upon certain doctrines of qualified privilege as authority for the issuance of the protective order sought by it.[4]

The Freedom of Information Act, 5 U.S.C. § 552, provides in pertinent part:

"(a)    *    *    *

"(3)    *    *    * each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action    *    *    *."

The exemptions to the provision on which the government relies in this case are found in subsections (b) (5) and (7) which state:

"(b) This section does not apply to matters that are—

*    *    *    *    *    *

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

*    *    *    *    *    *

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency * * *."[5]

In applying an exemption created by the Act it must be remembered that since the "overriding emphasis of its [the Act's] legislative history is that information maintained by the executive branch should become more available to the public,[6] . . . [a] broad construction of the exemptions would be contrary to the express language of the Act." Wellford v. Hardin, 444 F.2d 21, 25 (4th Cir. 1971). Moreover ". . . by its terms and tenor, the statute creates no new exemption for agency files; in the several exemptive provisions it merely recognizes and codifies the existing judicially and congressionally created exemptions." Cooney v. Sun Shipbuilding & Drydock Co., 288 F.Supp. 708, 712 (E.D.Pa.1968). As to the investigatory file exemption, the threshold determinations to be made in a case of this nature are first, whether the document in question is part of an "investigatory fil[e] compiled for law enforcement purposes" within the meaning of the Act; and second, if it is, whether that particular file should be accorded immunity from disclosure.

---

4. Since the government has indicated that these claims of privilege have been raised by the Secretary of Labor, we will assume that they have been validly asserted by him.

5. These exemptions are implemented in the Department of Labor regulations, 29 C.F.R. § 70.

6. Attorney General's Memorandum on Public Information Section of Administrative Procedure Act, p. 1 (1967).

■ Cooney v. Sun Shipbuilding & Drydock, Co., *supra*, is a case involving factual and legal issues very similar to those in the instant case. That case involved a civil suit for damages arising out of the accidental death of plaintiff's decedent, an employee of the defendant company, as a result of a fall from a ship located at the defendant's drydock. There, plaintiff sought to compel production of a report of the accident prepared immediately after its occurrence by investigators representing the Office of Occupational Safety, Bureau of Labor Standards, United States Department of Labor. The report was to consist of statements of witnesses and the factual findings and conclusions of the investigators as to the cause of the accident. After analysing the relevant sections of the Longshoremen's and Harbor Workers' Compensation Act,[7] the rules promulgated thereunder [8] and the legislative history of the exemption on investigatory files,[9] Judge Higginbotham concluded in *Cooney* that the accident report prepared by the Office of Occupational Safety was a file prepared in connection with related government litigation and adjudicative proceedings and was therefore a file compiled for law enforcement purposes within the meaning of the Act. 288 F.Supp. at 711; *cf.* Cowles Communications, Inc. v. Department of Justice, 325 F.Supp. 726 (N.D.Cal.1971).

Following the reasoning of Judge Higginbotham in *Cooney*, this court concludes that the files and records sought here were ". . . compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Here the files and reports in issue actually led to a law enforcement proceeding which resulted in an injunction effective until July 1973.

Having determined that the reports and files are within the investigatory file exemption of the Act, our inquiry must shift now to determine whether these particular files should be accorded immunity from disclosure and, if so, to what extent.

■ In support of its policy against disclosure of the identity of or statements of witnesses whose names and statements appear within its investigatory files, the Department of Labor has asserted the informer's privilege. See Roviario v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Hemphill, 369 F.2d 539 (4th Cir. 1966). In determining the applicability of this privilege to the case at bar, this court must weigh the competing interests asserted and attempt to reconcile the conflicting policies involved. The government has argued that the purpose of the privilege is to protect and preserve the flow of information to the government. Disclosure of the identity of the informant or his statements, it contends, will inhibit persons in the future from informing if they know what they say is available to private litigants and that their rights of privacy will be jeopardized by making statements. Moreover, the government has argued that in the present action the reasons for the confidentiality of the identity of government informants are especially relevant under the facts here where the government is not a party to the action in which the disclosure is sought, but the law enforcement action to which the government is a party, Hodgson v. Maryland Shipbuilding and Drydock Co., *supra*, is not yet closed.

Defendants, on the other hand, contend that the informer's privilege is inapplicable because the identity of the informer, Wicker, has been established. They argue further that Wicker's statement to Inspector Nolan of the Department of Labor is crucial to the present action since Wicker is the one and only person who knows how the fire occurred. The defendants also observe that Wick-

7. *See* 33 U.S.C. § 941(c) and (e).

8. *See* 29 C.F.R. §§ 1501–1509.

9. *See* House Report 1497, 1966 U.S.Code Congressional and Administrative News, pp. 2418 et seq.

er's statement to the government investigators may be contrary in important respects to the facts related by him at his deposition in the case and that, if so, nonproduction of his prior statement to the government could result in the decision in this case being based on perjured testimony. The defendants contend that they have reason to believe that in a prior statement to Mr. Nolan of the Department of Labor, Wicker admitted placing an oxygen line into the tank where the fire occurred and turning on the valve. If this statement is true, it tends to show that Wicker's negligence was the cause of the fire. In his later statements, however, Wicker has denied these facts or that he made such a statement to anyone.[10]

The competing interests of the government and of the defendants cited to the court in this situation both have merit and deserve consideration. In the interest of fairness and justice this court, therefore, will undertake an *in camera* inspection of Wicker's statements to determine if he, in fact, made a statement concerning the placing of an oxygen line into the cofferdam and, if he did, whether such a statement is inconsistent with his subsequent statements to such an extent that its production is required. *See* Cowles Communications, Inc. v. Department of Justice, *supra.*

To prevent the disclosure of the opinions, conclusions and recommendations of its officials, the Labor Department has invoked the intra-agency memorandum privilege, which, as has been previously noted, is now codified as exemption (b) (5) of the Freedom of Information Act of 1967. Defendants contend that the material they desire is not within the scope of the privilege since they do not seek the mental processes,

deliberations or personal opinions but rather only the conclusions and recommendations of the Labor Department officials.

The government has asserted that the purpose of this privilege is to promote frank and open interplay among members of an agency in the exercise of their official duties and to prevent premature discovery of the government's case. Disclosure of the deliberations of agency members, it contends, will have a stifling effect on this interaction and any impending litigation. As a showing of good cause to justify the setting aside of the privilege, defendants have stated that the information is needed to solve the mystery of the HESS PETROL fire. It appears that defendants have investigated the incident very thoroughly, and have been unable to determine with any certainty the cause or causes of the fire.

■■ No case has been cited to this court nor has this court found any case which holds that the conclusions of the government in investigating an accident are absolutely privileged from disclosure. The privilege that exists is only a qualified one, which can give way under appropriate circumstances. Those cases that have allowed discovery of the government's conclusions regarding investigations of accidents where the government was not a party to the action are based on the rationale that where no government action is impending, disclosure of the conclusions of the government where good cause is shown outweighs the interest of the government in protecting its fact-finding process. *See* Machin v. Zuckert, 114 U.S.App.D.C. 335, 316 F.2d 336 (1963); Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D. C. 106, 280 F.2d 654 (1960); *see also* Cooney v. Sun Shipbuilding & Drydock Co., *supra.* In the instant case where

10. The government has filed the affidavit of William J. Nolan, Jr., in which Mr. Nolan confirms Wicker's denial stating, "At no time, either during my initial visit to the ship or at any time thereafter, did Wicker ever state to me that he had placed an oxygen line into the cofferdam or tank where the accident occurred."

the government has no "active" litigation in progress, we believe that disclosure of the results of the Department of Labor's HESS PETROL investigation will neither endanger the government's fact-finding process nor jeopardize any litigation in which the government is involved.

■ However, in addition to those matters it had agreed to provide, the government will be required to produce only the official conclusion, if any, of the Department of Labor as to the cause of the fire aboard the SS HESS PETROL on or about July 27, 1968. The government will not be required to produce individual conclusions, as such, of its investigators nor the recommendations of the Department. This should preserve the integrity of the deliberative process of the Department while at the same time serve the interests of the fact-finding process in this proceeding.[11]

■ The government's final plea for a protective order concerns the requested testimony of the four compliance officers who investigated the HESS PETROL fire. The parties to this action have sought to depose them regarding their knowledge of the fire obtained during their investigation.

In support of the issuance of a protective order, the government has cited certain proposed regulations promulgated by the Secretary of Labor pursuant to section 8(g) (2) of the Williams-Steiger Occupational Safety and Health Act of 1970.[12] In essence these regulations prohibit employees of the Department from testifying in private matters and instruct the Solicitor to attempt to have any subpoena withdrawn or modified if it will adversely affect the performance of official duties. The policy behind

this prohibition is to conserve the time of government employees for the conduct of official business, to minimize governmental involvement in controversial matters unrelated to official business, and to avoid expenditures of government time and money for private purposes.

Although these are only proposed regulations, we believe that the reasoning behind them is sound and apposite to the instant case and merits the issuance of a protective order. We see no compelling reason why these government employees should be ordered to testify as to their knowledge of the HESS PETROL incident, especially where the government has agreed to permit disclosure of a large portion of its investigatory file and where the court has ordered disclosure of the government's ultimate conclusions in that file. With such ample disclosure of the government's findings, we are not convinced that the testimony of these officers is merited under the circumstances presented. Accordingly, a protective order will be issued prohibiting the involuntary testimony of the four government officials aforesaid by deposition or otherwise in the absence of further order of this court.

Accordingly, it is this 22nd day of May, 1972, by the United States District Court for the District of Maryland, ordered:

1. That the United States Department of Labor, Bureau of Standards, Office of Occupational Safety, produce for an *in camera* inspection by this court, within 20 days after the date of this order, all statements made by John A. Wicker, if any, which it has in its possession, concerning a fire which occurred aboard the SS HESS PETROL on or about July 27, 1968.

---

11. The government has also asserted the work product privilege as to both the statement of Wicker and the conclusions of its investigators. It is uncertain whether the privilege is applicable here since the government is not a party to this action and since the initial case, to which the government was a party, is, as a practical

matter, concluded. However, even if the privilege could be invoked by the government, we feel that it would not alter our conclusions above.

12. These proposed regulations are found in 36 Fed.Reg. 13849 and 29 C.F.R. § 1906.

2. That the aforesaid Office of Occupational Safety produce to those parties that have so requested the official conclusions of that governmental department, if any, as to the cause of the fire aboard the SS HESS PETROL on or about July 27, 1968.

3. That the aforesaid Office of Occupational Safety produce, as it has agreed to do, so much of its records as contain the physical observations of the compliance officers and their report of the facts regarding the accident as well as any diagrams and pictures of the physical location of the accident made by these officers.

4. That the motion for a protective order as to the involuntary testimony of the four compliance officers be, and the same is hereby, granted until further order of this court.

5. That the hereinbefore mentioned subpoenas duces tecum issued to the four compliance officers of the Department of Labor be, and the same are hereby, quashed to the extent that they are not in accordance with this opinion.