716 A.2d 258

**Loretta V. FIORETTI, R.D.H.**

v.

**MARYLAND STATE BOARD OF DENTAL EXAMINERS.**

No. 16, Sept. Term, 1998.

Court of Appeals of Maryland.

Aug. 31, 1998.

68

Christopher I. Moylan and Martin I. Moylan (Christopher I. Moylan and Wright, Meehan & Moylan, on brief), Baltimore, for appellant.

Cynthia G. Peltzman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.; Andrew H. Baida, Atty. Gen., on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CATHELL, Judge.

██ In this case we examine the Maryland Public Information Act and its exemptions from the disclosure of otherwise public documents. Because the Maryland State Board of Dental Examiners failed to demonstrate that documents in its possession relating to its investigation of Loretta V. Fioretti, a dental hygienist, were investigatory files compiled for a law enforcement purpose and, additionally, failed to demonstrate that her inspection of the documents should have been denied to the extent that such disclosure would prejudice the Dental Board's investigation, we shall reverse the trial court's grant of the Motion to Dismiss.

## I.  Facts and Procedural History

The facts in this case are not in dispute.  On April 17, 1997, the Secretary–Treasurer of the Maryland State Board of Dental Examiners (the Board) sent Loretta V. Fioretti, appellant, a letter informing her that the Board, appellee, had reason to believe that on April 16, 1997, appellant "may have performed dental hygiene procedures without on-site supervision by a licensed dentist, as required by the MARYLAND DENTISTRY ACT, MD.CODE. ANN., HEALTH OCC. ("HO") §§ 4–101 to 4–702 (1994)."  The letter went on to advise appellant that she should "immediately cease and desist the unsupervised practice of dental hygiene."  The letter further stated that,

"subject to the hearing provisions of § 4–318 of this subtitle, the Board may ... reprimand any licensed dental hygienist, place any licensed dental hygienist on probation, or suspend or revoke the license of any licensed dental hygienist, if the ... licensee ... (7)[p]erforms intraoral functions not authorized by statute or the rules and regulations of the Board ... [and] (9)[v]iolates any rule or regulation adopted by the Board."

The letter then informed appellant that the Board's Discipline Review Committee would consider the matter at a meeting to be held on April 23, 1997.[1] The Board also required appellant to sign, date, and return an "Agreement," which stated that she agreed to "only practice dental hygiene in the State under the supervision of a licensed dentist who is physically on the premises and available for personal consultation while the services are being performed, and only as provided in the Maryland Dentistry Act."

Appellant's counsel wrote a letter dated April 21, 1997, to the Administrator of the Board. This letter sought a copy of the complaint lodged against appellant and other appropriate documents relating to the matter. On April 28, 1997, after receiving no reply to his initial letter, appellant's counsel made a second request to the Board. The Administrator responded in a letter dated May 7, 1997. This letter acknowledged receipt of counsel's April 21 letter, but went on to state that appellant's request was denied as a case under investigation pursuant to the Maryland Public Information Act, Maryland Code (1984, 1995 Repl.Vol., 1997 Supp.), sections 10–611 to 10–630 of the State Government Article (the PIA).[2]

Appellant filed a complaint in the Circuit Court for Baltimore City on May 22, 1997, alleging that under sections 10–611 to 10–630 of the PIA, appellant had an absolute right to inspect the Board's files. Appellee filed a Motion to Dismiss on July 10, 1997, in which it argued that it properly denied inspection to appellant because the documents comprised "an investigatory file" under section 10–618(f)(1)(ii) of the PIA and disclosure of the documents would prejudice the Board's pending investigation pursuant to section 10–618(f)(2)(vi).[3] This

---

1. This meeting never took place.

2. All statutory references shall be to the State Government Article unless otherwise indicated.

3. It is important to note that the *only* ground upon which the Board based its motion below was that "the Board denied inspection ...

motion was not supported by affidavit, and we did not find any other form of evidentiary support of the motion in the record. On July 25, 1997, appellant filed a response to appellee's Motion to Dismiss. Without holding a hearing, the circuit court granted appellee's Motion to Dismiss on August 1, 1997. This order was not entered on the docket until August 11, 1997.

On August 19, 1997, appellant filed with the circuit court a Motion for Reconsideration and Request for Hearing. By an order signed on September 12, 1997, and subsequently filed on September 17, 1997, the circuit court denied appellant's motion without a hearing. Appellant timely noted an appeal to the Court of Special Appeals. We issued a Writ of Certiorari before that court heard arguments in the matter.

Appellant presents the following questions for our review:

I.  Is a complaint filed with the Maryland State Board of Dental Examiners an investigatory file compiled for law enforcement or prosecution purposes within the meaning of the Public Information Act?

II. Assuming that the Maryland State Board of Dental Examiners is a law enforcement or prosecutorial agency within the meaning of the Public Information Act, is the Board required to make a particularized showing that its records are exempt from disclosure?

## II. Standard of Review

In accordance with Maryland Rule 2–322(b)(2), a defendant may seek dismissal of a complaint if it fails "to state a claim upon which relief can be granted." The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. *Bobo v. State,* 346 Md. 706, 709, 697 A.2d 1371, 1373 (1997); *Rossaki v. NUS Corp.,* 116 Md.App. 11, 18, 695 A.2d 203, 207 (1997); *Hrehorovich v. Harbor Hosp. Center, Inc.,* 93 Md.App. 772, 785, 614 A.2d 1021, 1027 (1992),

pursuant to ... § 10–618(f), which permits the Board to deny inspection ... if such inspection would prejudice an investigation."

*cert. denied,* 330 Md. 319, 624 A.2d 490 (1993). In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action. *Bramble v. Thompson,* 264 Md. 518, 520, 287 A.2d 265, 267 (1972). *See also Rossaki,* 116 Md.App. at 18, 695 A.2d at 207; *Lubore v. RPM Assocs., Inc.,* 109 Md.App. 312, 322, 674 A.2d 547, 552, *cert. denied,* 343 Md. 565, 683 A.2d 177 (1996); *Hrehorovich,* 93 Md.App. at 785, 614 A.2d at 1021. An appellate court should presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom. *Bobo,* 346 Md. at 708, 697 A.2d at 1372; *Bennett Heating & Air Conditioning, Inc. v. NationsBank,* 342 Md. 169, 174, 674 A.2d 534, 536 (1996); *Morris v. Osmose Wood Preserving,* 340 Md. 519, 547, 667 A.2d 624, 630 (1995); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327, 331 (1993); *Flaherty v. Weinberg,* 303 Md. 116, 136, 492 A.2d 618, 628 (1985).

## III. Discussion and Analysis

The Maryland PIA provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." § 10–612(a). "[U]nless an unwarranted invasion of the privacy of a person in interest would result," the PIA "shall be construed in favor of permitting inspection of a public record." § 10–612(b). A person in interest is defined as "a person . . . that is the subject of a public record," § 10–611(e)(1). There is no dispute in the instant case that appellant is or was the subject of the alleged investigation and thus is a person in interest, or that the records at issue are a public record.[4]

---

4. Section 10–611(g) of the Maryland PIA defines a public record as:
   (1) "Public record" means the original or any copy ·of any documentary material that:
   (i) is made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and
   (ii) is in any form, including:
   1. a card;
   2. a computerized record;

This Court has noted that "the provisions of the Public Information Act reflect the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). Custodians may deny access to records, however, under certain specific statutory exemptions. *See* §§ 10–615 to 10–619; *see also Faulk v. State's Attorney for Harford County,* 299 Md. 493, 506–07, 474 A.2d 880, 887(1984) ("[T]he Maryland Public Information Act, like the FOIA,[5] mandates disclosure of certain records in the possession of certain agencies unless the requested records are within the scope of a statutory exemption.").

One of the PIA's exemptions provides:

(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a

---

3. correspondence;
4. a drawing;
5. film or microfilm;
6. a form;
7. a map;
8. a photograph or photostat;
9. a recording; or
10. a tape.

(2) "Public record" includes a document that lists the salary of an employee of a unit or instrumentality of the State government or of a political subdivision.

(3) "Public record" does not include a digital photographic image or signature of an individual, or the actual stored data thereof, recorded by the Motor Vehicle Administration.

**5.** Freedom of Information Act, 5 U.S.C. § 552 (1995).

city or county attorney, a police department, a local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

(iv) disclose the identity of a confidential source;

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

§ 10–618(f). Appellee claims its files regarding appellant are exempt from disclosure under section 10–618(f). There is no dispute that the Dental Board is not one of the "enumerated agencies" listed in section 10–618(f)(1)(i).[6] Therefore, in addressing appellant's questions, we first must resolve whether the Board demonstrated to the circuit court that the files in appellee's possession relating to appellant's alleged misconduct were "investigatory file[s] compiled for any other law enforcement, judicial, correctional, or prosecution purpose." § 10–618(f)(1)(ii). If so, we then must address whether the Dental Board demonstrated that the disclosure of its records would prejudice its investigation of appellant. § 10–618(f)(2)(vi).[7]

---

6. The Dental Board is a legislatively-created entity under the Department of Health and Mental Hygiene. See Md.Code (1981, 1994 Repl.Vol.), § 4–201 of the Health Occupations Article (HO). See also HO § 1–201(d).

7. Although we do not specifically resolve the issue, we note that if the Dental Board could demonstrate to the trial court that disclosure would prejudice its investigation, it then must show to what extent disclosure would prejudice its investigation. To that end, the government agency can withhold only such documents or portions thereof to the extent such harm would occur. It is entirely possible, therefore, that even though Dental Board files fit within the exemption, a substantial portion of those documents could be required to be disclosed because

## A. Is a complaint filed with the Maryland State Board of Dental Examiners an investigatory file compiled for law enforcement or prosecution purposes within the meaning of the Public Information Act?

This Court has not had occasion to examine specifically the exemption provided in section 10–618(f)(1)(ii) and the extent to which disclosure may be denied under that exemption pursuant to section 10–618(f)(2). The federal courts and the United States Supreme Court, however, have analyzed extensively similar exemption provisions of the FOIA. Although the FOIA does not contain a provision stating that a custodian may deny disclosure of a record "to the extent that the inspection would ... prejudice an investigation," § 10–618(f)(2)(vi),[8] this Court has stated that the interpretations and reasoning of the federal courts addressing the "investigatory files" exemption provided in section 552(b) of the FOIA, the

---

release of only a small portion of the records would "prejudice" the government agency's investigation. *See generally* Section B, *infra.*

**8.** *Compare* § 10–618(f)(1)(ii) and (f)(2) of the Maryland PIA, *supra, with* § 552(b)(7) of the FOIA, which provides that the mandatory disclosure of agency documents does not apply to:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

The federal FOIA does not contain a provision similar to § 10–618(f)(2)(vi) of the Maryland PIA.

so-called "Exemption 7," are persuasive. We said in *Faulk,* 299 Md. at 506, 474 A.2d at 887:

Where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive. *See, e.g., East v. Gilchrist,* 293 Md. 453, 459, 445 A.2d 343, 345 (1982); *James v. Prince George's County,* 288 Md. 315, 330, 418 A.2d 1173, 1181 (1980); *Comptroller of the Treasury v. Mandel etc. Re-election Committee,* 280 Md. 575, 580, 374 A.2d 1130, 1133 (1977); *Montgomery County Board of Education v. Glassman Construction Co.,* 245 Md. 192, 202–04, 225 A.2d 448, 454–55 (1967). The purpose of the Maryland Public Information Act, enacted by Chapter 698 of the Laws of 1970, is virtually identical to that of the FOIA, enacted in 1966 by Pub.L. No. 89–487, 80 Stat. 250. The Maryland Public Information Act, like the FOIA, was broadly conceived. Its purpose was to provide the public the right to inspect the records of the State government or of a political subdivision. *A.S. Abell Publishing Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068, 1071 (1983). Its basic policy was in favor of disclosure. [§ 10–612]. Additionally, the language of [§ 10–618(f) ], as amended by Chapter 1006 of the Laws of 1978, the general exemption of investigatory records compiled for law-enforcement purposes, is virtually identical to the language of its federal counterpart, Exemption 7, as amended in 1974 by Pub.L. No. 93–502, § 2, 88 Stat. 1561, 1563. Moreover, the historical development of [§ 10–618(f) ] parallels that of its federal counterpart, Exemption 7(A). Under these circumstances, the Supreme Court's interpretation of Exemption 7(A) is persuasive. [Footnote omitted.]

The Supreme Court has stated that judicial review of FOIA Exemption 7 requires a "two-part inquiry. First, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.' [Second,] [i]f so, the agency must demonstrate that release of the material would have one of the six results specified in the Act." *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 622, 102

S.Ct. 2054, 2059–60, 72 L.Ed.2d 376 (1982). *See also Pope v. United States*, 599 F.2d 1383, 1385 (5th Cir.1979) (noting two-step inquiry); *Pilar v. SS Hess Petrol*, 55 F.R.D. 159, 162 (D.Md.1972) (noting application of exemption provisions of FOIA requires two-part inquiry); *cf. Pratt v. Webster*, 673 F.2d 408, 413 (D.C.Cir.1982) (describing the FOIA Exemption 7 language as prescribing a three-part test: the materials at issue (1) must be an "investigatory record," (2) "compiled for law enforcement purposes," and (3) must satisfy the requirements of one of the six sub-parts of Exemption 7).[9]

█ The Maryland Court of Special Appeals likewise has held that under the PIA, judicial review of the "investigatory files" exemption requires a two-step inquiry:

[I]t must be expressly shown that the data sought . . . is part of investigatory files compiled . . . for law enforcement . . . purposes.

. . . .

. . . Having determined that the requested information comes within the investigatory files exception, we must now determine whether this information should be accorded immunity from disclosure. Resolution of this question depends on whether disclosure would produce one of the seven harms enumerated in section 3(b)(i).[10]

*Equitable Trust v. Commission on Human Relations*, 42 Md.App. 53, 75–77, 399 A.2d 908, 921–23 (1979), *rev'd on other grounds*, 287 Md. 80, 411 A.2d 86 (1980). Additionally, in keeping with the broad purpose of the FOIA, courts must interpret the exemptions narrowly and in favor of disclosure. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989); *Nadler v. United States Dep't of Justice*, 955 F.2d 1479, 1484 (11th Cir.1992).

---

**9.** *Pratt* divides the first step inquiry of the other cases into two steps. Otherwise, the test is the same as in the other cases cited.

**10.** *Equitable Trust* involved Article 76A, the predecessor statute to current Subtitle 6, Part III of the State Government Article.

■   Under both the PIA and the FOIA, the public agency involved bears the burden in sustaining its denial of the inspection of public records. *Compare* § 10–623(b)(2)(i) *with* 5 U.S.C. § 552(a)(4)(B). *See also John Doe Agency*, 493 U.S. at 152, 110 S.Ct. at 475, 107 L.Ed.2d 462; *Nadler*, 955 F.2d at 1484; *Moorefield v. United States Secret Service*, 611 F.2d 1021, 1023, *cert. denied*, 449 U.S. 909, 101 S.Ct. 283, 66 L.Ed.2d 139 (1980); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F.Supp. 708, 710 (1968); *Equitable Trust*, 42 Md.App. at 75, 399 A.2d at 921. Judge Rodowsky said for this Court in *Cranford v. Montgomery County*, 300 Md. 759, 780, 481 A.2d 221, 231 (1984): "If any agency has frustrated judicial review ... the trial court may ... exercise its discretion ... simply by ordering disclosure because of the agency's failure to meet its burden of satisfying the court that an exemption applies." This burden extends to both steps of the mandated inquiry. The unenumerated government agency must demonstrate both that the records are "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose," and that disclosure is not warranted "to the extent that the inspection would" result in one of the enumerated harms. The Supreme Court has noted that courts also "must be mindful ... that the FOIA was not intended to supplement or displace rules of discovery." *John Doe Agency*, 493 U.S. at 153, 110 S.Ct. at 475, 107 L.Ed.2d 462. *See also Faulk*, 299 Md. at 509, 474 A.2d at 889.

In considering the threshold determination of whether appellee's investigatory files were compiled for a law enforcement purpose, we shall examine the scope of the term "law enforcement purpose." In so doing, we must resolve whether this term contemplates only criminal proceedings. Appellant avers that because the Dental Board is an administrative agency, not a law enforcement or prosecutorial agency, the files it compiled during its investigation of appellant do not fall within the PIA's exemption and should not be withheld. Appellant's argument, however, misses the point. The language of section 10–618(f)(1)(ii) does not specify that the investigatory files must have been compiled by a law enforcement

*agency.* Rather, it exempts files, subject to sub-section (f)(2), compiled by any nonenumerated agency for law enforcement *purposes;* there is a distinct difference.[11]

This Court said in *Superintendent v. Henschen,* 279 Md. 468, 475, 369 A.2d 558, 562 (1977), that the legislature intended to differentiate between investigative files compiled by the law enforcement agencies enumerated in section 10–618(f)(i), which essentially are presumed to be of a law enforcement nature, and investigatory files collected by other unenumerated agencies pursuant to section 10–618(f)(ii):

> Section [10–618(f)(1)] is in the disjunctive, excepting records of investigation by the enumerated types of law enforcement agencies *or* investigatory files compiled for any other law enforcement or prosecution purposes. The statutory provision exempts from the mandatory disclosure requirement two categories of documents: (1) investigatory records of certain named law enforcement agencies; (2) investigatory records of other governmental agencies which were compiled for law enforcement or prosecution purposes. It is only with respect to the second category that there is an express requirement that the records be compiled for law enforcement or prosecution purposes. The statutory language, and particularly the use of the word *other* before the phrase "law-enforcement or prosecution purposes," suggests that the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes.

---

**11.** See *Prince George's County v. Commission on Human Relations,* 40 Md.App. 473, 483 n. 13, 392 A.2d 105, 112 n. 13 (1978), stating that the Commission on Human Relations is not a law enforcement agency in part because "[a] law enforcement agency generally has the power to make arrests," a power which the Commission on Human Relations does not possess. Likewise, the Dental Board has no such power. It may, however, impose regulatory sanctions, HO § 4–315(b), impose a monetary penalty, HO § 4–317, or enjoin prohibited activities, HO § 4–320.

Because the records sought in *Henschen* were compiled by the police department, an enumerated agency, we held that the legislative presumption negated the need for the agency to demonstrate that the files were compiled for a law enforcement purpose.

■ In the case at bar, simply because the Dental Board is not a traditional law enforcement agency or an enumerated agency does not take the files it compiles relative to investigations for law enforcement purposes out of the purview of the section 10–618(f)(1)(ii) exemption. Rather, the key determination is whether the agency, even if it typically does not perform law enforcement duties, compiled its investigatory files for a law enforcement *purpose.*

■ Just as the agency compiling the investigatory records need not be a traditional "law enforcement agency," the investigation itself need not be of a "criminal" nature. The Court of Special Appeals recognized this principle in *Equitable Trust,* 42 Md.App. at 75–76, 399 A.2d at 921:

> Although *Henschen, supra* was not concerned with and did not answer the question of when records of an agency other than one named in section [10–618(f)(1)(i)] are considered as compiled for "law enforcement or prosecution purposes," there is a spate of federal cases which hold, as a general proposition, that where files are prepared in connection with related government litigation and adjudicative proceedings currently under way or contemplated, they are compiled for law enforcement purposes within the meaning of 5 U.S.C., section 552(b)(7) of the ... [FOIA,] which closely parallels [sections 10–618(f)(1)(ii) and (f)(2)].

An examination of the many federal cases reveals that FOIA's Exemption 7 is not limited to criminal investigations. In a recent case, *Mittleman v. Office of Personnel Management,* 76 F.3d 1240 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 975, 136 L.Ed.2d 858 (1997), Elaine Mittleman requested documents collected in a background investigation by the Office of Personnel Management (OPM) regarding her application for government employment. OPM released cer-

tain documents after redacting portions identifying the sources of certain information, claiming its right to withhold such information under section 552(b)(7)(D) of the FOIA. Mittleman filed a claim pursuant to the FOIA to enjoin OPM from withholding the documents. The federal district court granted OPM's motion for summary judgment, determining that OPM properly withheld the information under Exemption 7(D). On appeal to the Court of Appeals for the District of Columbia, Mittleman challenged only the district court's determination that her background check was compiled for law enforcement purposes.

■ Noting that the primary purpose of OPM's background investigations is to make certain that a prospective employee has not broken the law or otherwise engaged in conduct rendering her ineligible for government employment, the court held that the information gathered by OPM in its investigation was compiled for "law enforcement purposes." The court stated: "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope. *See Pratt v. Webster,* 673 F.2d 408, 420 n. 32 (D.C.Cir.1982). Thus, ' "[e]nforcement" of the law fairly includes not merely the detection and punishment of violations of law but their prevention.' " *Mittleman,* 76 F.3d at 1243 (quoting *Miller v. United States,* 630 F.Supp. 347, 349 (E.D.N.Y.1986)). Other courts have held likewise. *See Pope,* 599 F.2d at 1386 (holding that Exemption 7 of the FOIA "applies to civil, and regulatory proceedings as well as to criminal matters"); *Moore–McCormack Lines, Inc. v. I.T.O. Corp.,* 508 F.2d 945, 949 (4th Cir.1974) ("The legislative history indicates that this exemption is meant to apply to all law enforcement proceedings, not just to violations of the criminal statutes."); *Wellman Indus. v. N.L.R.B.,* 490 F.2d 427, 430 (4th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974) (determining that the legislative history of Exemption 7 supports the interpretation that the exemption is not limited to criminal investigations). *See also Yarbrough v. Department of Corrections,* 199 Mich.App. 180, 185, 501 N.W.2d 207, 210 (1993) ("The law enforcement exemption

contained in [Michigan's Freedom of Information Act] is not limited in application to police investigations of criminal matters."). In light of the close parallels between the FOIA and the PIA, we are persuaded that "law enforcement purposes" is not limited to criminal investigations and applies to civil and regulatory proceedings as well.

██ This determination, however, is not without limits. The fact that an unenumerated government agency, which seeks to withhold documents under this exemption, typically conducts as one of its main functions some form of law enforcement is not dispositive of whether the files were compiled for a law enforcement purpose. *Pratt*, 673 F.2d at 418. This is because many agencies, if not most, perform functions not related to law enforcement as part of their day-to-day business. *Id.* Even traditional law enforcement agencies conduct administrative or other types of business totally unrelated to enforcing laws. *See id.* Furthermore, although it has been held that FOIA's "exemption 7 protection does not end 'when there is no longer any prospect for future enforcement proceedings ...,' " *Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73, 80 (D.C.Cir.1974), "the bare assertion that the files are for law enforcement purposes is not sufficient to preclude disclosure when no enforcement proceedings are contemplated." *Moore–McCormack*, 508 F.2d at 949. Therefore, simply because an agency asserts that its files were compiled for law enforcement purposes is insufficient under the language of the exemption. The agency must, in each particular PIA action, demonstrate that it legitimately was in the process of or initiating a specific relevant investigative proceeding in order to come under the aegis of the exemption.

In the case at hand, appellee filed a Motion to Dismiss and supporting memorandum arguing it was permitted under the PIA exemptions to deny inspection of the Dental Board files to appellant. The crux of appellee's argument in that memoranda stated:

First, the "complaint and other relevant documents" requested, comprise the Board's investigatory file on Plaintiff, compiled for the purpose of enforcing the Maryland Dentistry Act (the "Act"), Md.Code Ann., Health Occ. ("HO") § 4-101 *et seq.* If the investigation reveals Plaintiff violated a provision of the Act, the Board may refer the matter for administrative prosecution against Plaintiff's license. The requested documents therefore comprise "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose." SG § 10–618(f)(1)(ii).

Second, disclosure of the requested documents to plaintiff at this time would jeopardize and hinder an ongoing investigation. Disclosure may, for example, reveal the identity of potential witnesses in the case before Board representatives have an opportunity to interview the witnesses or other individuals who have relevant information. It is important to note that as the investigation is ongoing, no charges have been issued against Plaintiff and no disciplinary action has been proposed against Plaintiff's license.

In its brief before this Court, appellee asserts the circuit court had a sufficient basis for determining that the Board's files were compiled for a law enforcement or prosecution purpose. We disagree. As we stated *supra*, the government agency bears this burden. Here, appellee's motion was not supported by any affidavits, a summary of the so-called investigatory files, or other relevant evidence. The only information appellee put forward relative to the first step of the PIA exemption inquiry was its bald assertion that because the Board may refer the matter for some form of administrative prosecution, the files it had compiled were of a law enforcement nature. Appellee did not explain to the trial court, for instance, the nature of its "investigation," what typically occurred upon the conclusion of such investigations, or the possible penalties appellant could face.

It is quite possible that the Board presented no specific evidence in this matter because no substantial investigation took place. Only one day after appellant's alleged misconduct occurred, the Board issued its letter informing appellant of a

complaint filed against her and ordering her to "cease and desist" from such conduct. Further, the Board attempted to have her to sign an "agreement" or consent order that she would cease engaging in the activity for which she was ordered to cease and desist in the first place.[12] Agencies usually do not issue cease and desist orders until after an investigation is held that results in a finding that the conduct did occur and is likely to occur again.

Moreover, the Board never held its April 23, 1997, meeting to address appellant's alleged conduct and did not, as far as the record discloses, initiate contact with anyone who may have had information relating to the alleged incident other than the letter it sent to appellant. We also note that it was revealed at oral argument that the Board essentially ceased whatever investigation it had begun, apparently because of the present PIA litigation. No activity or "investigation," therefore, was conducted with regard to the complaint against appellant in the intervening four months between the date the complaint was taken to the date the circuit court granted appellee's motion to dismiss. Likewise, no investigative activity occurred between the order dismissing appellant's claim under the PIA and the present appeal, some fourteen months later. By all reasonable appearances, it would seem that no tenable investigation of appellant's alleged misconduct is now taking place or ever took place.[13]

---

12. At oral argument, this Court inquired into the legal effect of the consent order. The Board responded that it was common practice to require individuals who are the subject of complaints to sign such consent orders, but that the Board has no real power to compel a signature. Further, the Board can take no action for a subject's failure to sign and return the agreement. If, however, the subject signs and returns the agreement and then engages in the activity therein proscribed, the Board would then have grounds for additional disciplinary actions for that subject's violation of unprofessional conduct in failing to abide by the required "consent" order.

   We note that nowhere in the initial letter to appellant or in the agreement itself does the Board notify appellant of her options or the ramifications of agreeing to the provisions of the consent order.

13. Investigations generally connote action or activity. A suspension or cessation of activity raises the question of whether any investigation

In any event, appellee did not put any evidence before the court on a motion for summary judgment or otherwise. Therefore, the trial judge must have based his order only upon the face of the documents submitted. We conclude that the trial court erred in this regard because these documents did not satisfy the government's threshold burden of demonstrating that the records at issue fell within the section 10–618(f)(1)(ii) exemption. The motion and memoranda provided nothing but a bare conclusion by appellee that the documents were investigatory files compiled for a law enforcement purpose. Without more supporting information or an *in camera* inspection of the investigatory files, we fail to discern how the Board could have met its burden of establishing the nature of the information sought or how the trial court properly could have exercised discretion in the making of such a determination.

We are mindful that pursuant to section 10–623(c)(2), an *in camera* hearing is purely discretionary. *Cranford,* 300 Md. at 779, 481 A.2d at 231 ("[T]he ultimate standard under the [PIA] for determining whether an *in camera* inspection is to be made is whether the trial judge believes that it is needed in order to make a responsible determination on claims of exemptions."). In *Cranford,* however, the trial judge denied an *in camera* hearing where the government had presented its reasons for nondisclosure of the documents in writing and then further explained those reasons with oral testimony. We suggested in *Cranford* that

> [i]f a detailed description cannot be given in affidavits without revealing the very information sought to be protected, there is strong reason for conducting an *in camera*

---

remains underway. Along these lines, we note what this Court has said in construing the prior codification of this statute: "[W]e are persuaded that the purpose of the amendment was to make clear that § 3(b)(i) did not protect material ... after any reason for confidentiality had ceased to exist because an enforcement proceeding had been concluded." *Faulk,* 299 Md. at 508, 474 A.2d at 888. Accordingly, although we do not so hold, the Dental Board's inactivity raises the issue of the effect of "continuing investigations," which never officially cease, and whether this investigatory files exemption applies in such a case.

inspection. If an agency has frustrated judicial review by presenting testimony or affidavits in conclusory form, the trial court may, depending upon all of the circumstances, appropriately exercise its discretion by ordering more detailed affidavits or by conducting an *in camera* inspection or simply by ordering disclosure because of the agency's failure to meet its burden of satisfying the court that an exemption applies.

*Id.* at 780, 481 A.2d at 231. In the present case, appellee presented neither affidavits nor testimony or any other evidence for that matter. We hold, therefore, that in the first instance, appellee failed to meet its burden of demonstrating that the records at issue were investigatory files compiled for a law enforcement purpose so that the exemption at issue would apply. Accordingly, we shall reverse the order granting appellee's Motion to Dismiss.

**B. Assuming that the Maryland State Board of Dental Examiners is a law enforcement or prosecutorial agency within the meaning of the Public Information Act, is the Board required to make a particularized showing that its records are exempt from disclosure?**

We shall also address the second portion of the two-part test, which requires that, in addition to establishing that its records relate to law enforcement purposes, the government agency must demonstrate to the circuit court that specific records are exempt from disclosure. More precisely, section 10–623(b)(2)(i) provides that in an action under the PIA, the government agency "has the burden of sustaining a decision to deny inspection of a public record." We cannot conceive of language any more direct requiring that the defending government agency, here the Dental Board, make some showing to sustain its assertion that otherwise public documents should be withheld.

Moreover, section 10–618(f)(i) provides that the custodian of the record may only deny inspection of the documents *subject to* subsection (2). Subsection (2) provides that "[a] custodian may deny inspection by a person in interest *only to the extent*

that the inspection would" result in one of seven enumerated harms. § 10–618(f)(2) (emphasis added). Our reading of this language, particularly in conjunction with section 10–623(b)(2)(i), leads us to conclude that not only is the Dental Board required to show that the documents it seeks to withhold are investigatory files compiled for law enforcement purposes, but that disclosure of the records would have prejudiced its investigation. What is more, even if the Dental Board demonstrated to the circuit court that such prejudice would have occurred, the statute makes clear that this does not create an across-the-board immunity from disclosure. Rather, the circuit court can deny inspection *only to the extent* that disclosure would result in prejudice to the particular investigation. That is, if the Dental Board only could show that disclosure of the name of the person filing the complaint would have prejudiced its investigation, then the files should have been disclosed to appellant with the complainant's name, or any other information identifying the complainant, redacted. We reiterate that it was appellee's burden to prove the harm and the extent to which disclosure to appellant would have resulted in the harm.

Various cases support the interpretation that "the agency must demonstrate that release of the material would have one of the ... results specified in the Act." *Abramson*, 456 U.S. at 622, 102 S.Ct. at 2060, 72 L.Ed.2d 376; *John Doe Agency*, 493 U.S. at 152, 110 S.Ct. at 475, 107 L.Ed.2d 462; *Pratt*, 673 F.2d at 413; *Pope*, 599 F.2d at 1385; *Pilar*, 55 F.R.D. at 162; *Equitable Trust*, 42 Md.App. at 75–77, 399 A.2d at 921–22. Moreover, the Supreme Court, in interpreting the FOIA, has stated that an agency must so demonstrate with specificity. *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978). "Thus, where an agency fails to 'demonstrat[e] that the ... documents [sought] relate to any ongoing investigation or ... would jeopardize any future law enforcement proceedings,' Exemption 7[ ] would not provide protection to the agency's decision." *Id.* (some brackets in original )(quoting ADMINISTRATION OF THE FREEDOM OF INFORMATION ACT, H.R.REP. No. 92–1419 (1972),

*reprinted in* HOUSE COMMITTEE ON GOVERNMENT OPERATIONS AND SENATE COMMITTEE ON THE JUDICIARY, FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (Pub.L.93–502) SOURCE BOOK, 94TH CONG., 1ST SESS., 15 (JOINT COMM. PRINT 1975)).

Appellee argues that under our decision in *Faulk*, it is not required to "come forward with evidence to support its exemption claim." Rather, appellee contends, a circuit court can make a determination that disclosure of the documents would necessarily prejudice the Board's investigation in the absence of any direct evidence to that effect. In *Faulk*, investigatory police reports regarding criminal offenses allegedly committed by Faulk were presented to a grand jury. The grand jury indicted him of two separate burglaries. Faulk then sought to obtain, by a discovery request pursuant to criminal proceedings pending against him, production of the investigatory records. The trial court denied Faulk's request for disclosure of the investigatory police reports.

Affirming the judgment of the Court of Special Appeals, we held that the custodian of the investigatory police reports properly withheld disclosure. In so holding, we stated:

> [U]nder Art. 76A, § 3(b)(i)(A) the State is not required to make a particularized showing that the disclosure of investigatory police reports compiled for law-enforcement purposes to a defendant in a pending criminal proceeding would interfere with that pending criminal proceeding. Rather, a generic determination of interference can be made whenever a defendant in a pending criminal proceeding seeks access to investigatory police reports relating to that pending criminal proceeding.

*Faulk*, 299 Md. at 511, 474 A.2d at 889.[14]

In *Faulk*, the records sought were files that were part of an investigation by the police department into criminality, and the police department was an enumerated agency pursuant to

---

**14.** The distinction in *Faulk* was expressly qualified to apply when a criminal defendant seeks investigatory files relating to the crime for which he is being tried. *Faulk* goes no further.

the statutory predecessor to present section 10–618(f)(1)(i). Under those circumstances, we followed our holding in *Henschen*, 279 Md. at 475, 369 A.2d at 562, that "when the documents in question constitute records of an investigation by a police department (or sheriff's office or any of the other law enforcement agencies specifically listed in § [10–618(f)(1)(i)]), there need not be an actual showing that the records were compiled for law enforcement or prosecution purposes for the exception to be applicable." *See also Faulk*, 299 Md. at 507, 474 A.2d at 889–90. Under both cases, we based our determination that an enumerated agency was not required to make a particularized showing that its investigatory files were compiled for law enforcement purposes primarily upon the notion that "the Legislature believed that investigatory records of one of the enumerated law enforcement agencies were presumptively for law enforcement or prosecution purposes, but that investigatory records compiled by other agencies might or might not be for such purposes." *Henschen*, 279 Md. at 475, 369 A.2d at 562.

We went on in *Faulk* to explain that the Legislature had given no indication that it required the enumerated agencies to make a document-by-document determination that disclosure of the otherwise public documents would create an interference with the particular case. Accordingly, we concluded that when the enumerated law enforcement agencies are involved, a trial court could make, even in the absence of direct evidence, determinations that "disclosure of the requested materials necessarily 'would interfere' with law-enforcement proceedings." *Faulk*, 299 Md. at 508, 474 A.2d at 888.

Appellee's reliance on *Faulk* is misplaced as that case can be distinguished from the case *sub judice* in two ways. First, the Dental Board is not an enumerated law enforcement agency, such as a police department, so there is no presumption that its investigatory files are compiled for law enforcement-related purposes. Second, in *Faulk*, the agency relied upon a completely different enumerated harm: that the disclosure would "interfere with valid and proper law enforcement

proceedings." *See* § 10–618(f)(2)(i). The harm claimed by appellee in the present case is that disclosure of the records would "prejudice an investigation." § 10–618(f)(2)(vi). Therefore, the Dental Board cannot claim that disclosure of its files would "necessarily interfere" with its enforcement proceedings when it only has claimed that disclosure, under the circumstances present, would prejudice its investigation. Accordingly, any application of *Faulk* by appellee's reasoning cannot be extended to the case at hand.

Appellee similarly relies on *Robbins Tire & Rubber*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159, the case underlying our opinion in *Faulk*, for several propositions including the notion that "Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.' " *Id.* at 236, 98 S.Ct. at 2324, 57 L.Ed.2d 159. We believe *Robbins Tire & Rubber* is distinguishable from this case for the same reasons we stated above in our discussion of *Faulk*.[15]

Finally, appellee relies upon *Faulk* for the proposition that the PIA "was not intended to be a device to enlarge the scope of discovery beyond that provided by the Maryland Rules." *Faulk*, 299 Md. at 510, 474 A.2d at 889. We do not believe that disclosure under the circumstances of this case would do so. In *Faulk*, discovery of the police reports at issue was not mandated under the Maryland Rules. In the case at hand, however, appellee admitted at oral argument that had the investigation resulted in a formal complaint, appellant may have had access to the files pursuant to discovery. Additionally, if the Dental Board ceased the investigation and dropped

---

**15.** Additionally, *Robbins Tire & Rubber* concerned "actual, contemplated enforcement proceedings." Appellee admitted in the memoranda accompanying its Motion to Dismiss that "no charges have been issued against [appellant] and no disciplinary action has been proposed against [her] license," so no definite and specific charges have been expressly contemplated or are underway. That which existed in *Robbins Tire & Rubber* does not exist here.

the accusations, appellant would have access to the files at issue under the PIA because there then would be no investigation to be prejudiced.

Here, because appellant asked to see the files, the Dental Board ceased its investigation, apparently because of the instant litigation, and has left the matter in a state of limbo for the past fourteen months. Had appellee continued its investigation, as indeed it should have, the investigation likely would have been concluded. Under those circumstances, appellant probably would have had access to the documents by now. The legislature clearly did not intend for public agencies to avoid disclosure under the PIA by failing to conclude investigations. Therefore, under the circumstances present, we fail to see how disclosure of the documents at issue in this case would enlarge the scope of the discovery rules such as to warrant the withholding of these documents.

Because appellee failed to demonstrate, or even attempt to demonstrate, that appellant's inspection of the documents would prejudice its investigation and to what extent disclosure would prejudice its investigation, the trial court abused its discretion in granting appellee's Motion to Dismiss. Accordingly, for this and because appellee failed to show that the records at issue were investigatory files compiled for a law enforcement purpose, we reverse the order granting the Motion to Dismiss.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; COSTS TO BE PAID BY APPELLEE.**

Concurring opinion by RAKER, J., in which RODOWSKY and WILNER, JJ., join.

Concurring opinion by WILNER, J., in which RODOWSKY and RAKER, JJ., join.

RAKER, Judge, concurring:

I concur with the judgment of the Court reversing the Circuit Court for Baltimore City. I agree that the Maryland

State Board of Dental Examiners failed to meet its burden in proving that the documents in its possession were investigatory files compiled for a law enforcement purpose. I join in the concurring opinion of Judge Wilner. In as much as the majority gratuitously addresses issues that need not be addressed in this case, I write separately because I disagree with the *dicta* in Section III. B. of the majority opinion as to the manner in which the State may satisfy its burden in sustaining its denial of a request to inspect records.

The majority correctly concludes that once the Board shows that the files were compiled for law enforcement purposes, the burden is on the Board to show that disclosure of the records would have prejudiced the investigation. Maj. op. at 87. Yet in interpreting Maryland Code (1984, 1995 Repl.Vol., 1997 Supp.), §§ 10–618(f)(2) and 10–623(b)(2)(i) of the State Government Article,[1] the majority concludes that:

> [T]he circuit court can deny inspection *only to the extent* that disclosure would result in prejudice to the particular investigation. That is, if the Dental Board only could show that disclosure of the name of the person filing the complaint would have prejudiced its investigation, then the files should have been disclosed to appellant with the complainant's name, or any other information identifying the complainant, redacted.

Maj. op. at 87. If the majority is suggesting that the circuit court must make a document-by-document, case-specific determination in every case that the examination of a particular record would prejudice an investigation, and that no generic determination of prejudice can ever be made, I believe the majority is incorrect.

The Board relies on *Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 474 A.2d 880 (1984), to support its argument that it may make a generic[2] determination that disclosure of

---

1. All statutory references shall be to the State Government Article, Maryland Code (1984, 1995 Repl.Vol., 1997 Supp.).

2. *Webster's Third New International Dictionary* defines generic as follows: "relating or applied to or descriptive of all members of a genus,

documents would necessarily prejudice an investigation. In *Faulk,* the records sought were police investigatory files related to a criminal investigation, and the police department was an enumerated agency under the statutory predecessor to present § 10–618(f)(1)(i). We held that a trial court could make a *generic* determination that disclosure of the requested materials necessarily would interfere with law enforcement proceedings. *Id.* at 508, 474 A.2d at 888. We concluded that "the General Assembly did not intend to preclude generic determinations of interference when the circumstances were such that disclosure necessarily 'would interfere' with law-enforcement proceedings." *Id.* at 508, 474 A.2d at 888. This Court permitted the generic determination that disclosure to a defendant of investigatory police reports in a pending criminal proceeding would interfere with law enforcement proceedings because it would substantially alter criminal discovery rules and likely would delay the adjudication of the criminal proceeding. *Id.* at 510, 474 A.2d at 889.

Faulk relied on *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), a case interpreting the federal Freedom of Information Act, 5 U.S.C. § 552 (1976) (hereinafter "FOIA"). The question in *Robbins Tire* was whether, under Exemption 7(A) of FOIA, the N.L.R.B. was required to present particularized evidence showing that the examination of witness statements would interfere with the pending labor proceedings. "The Supreme Court concluded that, when an unfair labor practice proceeding was pending, a particularized factual showing was not required and that a generic determination of interference was appropriate." *Faulk,* 299 Md. at 499, 474 A.2d at 883. The Supreme Court held that "[w]hile the Court of Appeals was correct that the amendment of Exemption 7 was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law

species, class, or group: common to or characteristic of a whole group or class: typifying or subsuming: not specific or individual ..." WEB-STER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, at 945 (Philip B. Gove ed., 1961).

enforcement purposes, we think it erred in concluding that no generic determinations of likely interference can ever be made." *Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2323–24.

The majority distinguishes *Faulk* on two grounds: first, that the Dental Board is not an enumerated law enforcement agency in the statute and, second, that in *Faulk*, "the agency relied upon a completely different enumerated harm: that the disclosure would 'interfere with valid and proper law enforcement proceedings.'" Maj. op. at 89–90. The majority summarily distinguishes *Robbins Tire* "for the same reasons we stated above in our discussion of *Faulk*." Maj. op. at 90. The majority does not elaborate on the significance of these distinctions, perhaps because there is none.

I disagree with the majority's analysis because I find no basis to conclude that the General Assembly intended to require a case-by-case determination of "prejudice" with regard to either named or unnamed agencies that compile investigatory records. *Cf. Faulk*, 299 Md. at 508, 474 A.2d at 888 ("There is nothing in the language or the legislative history of § 3(b)(i)(A) to indicate that the General Assembly intended to require a case-by-case showing that disclosure would reveal the State's case prematurely, result in delay or otherwise create a demonstrable interference with the particular case, and that generic determinations of interference could never be made."). I find the reasoning of *Faulk* and *Robbins Tire* to be applicable to enumerated and unenumerated agencies alike. The only distinction between those agencies that are enumerated in § 10–618(f)(1)(i), and those agencies not enumerated in § 10–618(f)(1)(ii), is that the investigatory records of the named agencies are *presumptively* compiled for law enforcement purposes. *See Superintendent v. Henschen*, 279 Md. 468, 475, 369 A.2d 558, 562 (1977).

Once, however, an unenumerated agency has made a successful showing that the requested records were compiled for law enforcement purposes, there is no rational basis to distinguish between named and unnamed agencies. Nor does the statute reflect any intention on the part of the General Assem-

bly to treat the agencies differently. Subparagraphs (i), (ii), and (iii) of § 10–618(f)(1) are all equally subject to the limitations of § 10–618(f)(2). "Although [the Legislature] could easily have required in so many words that the Government in each case show a particularized risk to its individual 'enforcement proceedings,' it did not do so...." *Robbins Tire*, 437 U.S. at 234, 98 S.Ct. at 2323. Indeed, as footnote 15 of *Robbins Tire* recognized, Congress failed to enact proposals which would have required the government to show a particularized risk to an enforcement proceeding in each case. *Id.* at 234 n. 15, 98 S.Ct. at 2323 n. 15.

Similarly, there is no evidence that the General Assembly intended to permit a generic determination that disclosure of certain documents would "interfere" with a valid and proper law enforcement proceeding under § 10–618(f)(2)(i), and yet simultaneously preclude a generic determination under § 10–618(f)(2)(vi) and instead require a particularized case-by-case showing that disclosure would "prejudice" an investigation. *See Lewis v. State*, 348 Md. 648, 660–61, 705 A.2d 1128, 1134 (1998) (recognizing the special emphasis placed upon construing simultaneously enacted statutory provisions in a consistent and harmonious fashion). In *Robbins Tire*, the Supreme Court noted that Exemption 7(A), the provision permitting a federal agency to refuse disclosure of investigatory records only to the extent that they would "interfere with enforcement proceedings," was distinct from the other exemptions for the following reasons:

> There is a readily apparent difference between subdivision (A) and subdivisions (B), (C), and (D). The latter subdivisions refer to particular cases—"a person," "an unwarranted invasion," "a confidential source"—and thus seem to require a showing that the factors made relevant by the statute are present in each distinct situation. By contrast, since subdivision (A) speaks in the plural voice about "enforcement proceedings," it appears to contemplate that certain generic determinations might be made.

*Robbins Tire*, 437 U.S. at 223–24, 98 S.Ct. at 2318. The same rationale applies to the Maryland Public Information Act. I

find no "apparent difference" between interfering with a law enforcement proceeding under subparagraph (i) and prejudicing an investigation under subparagraph (vi).

I agree with the majority that the Board had the burden of proving that all of the documents requested were investigatory records compiled for law enforcement purposes. This protects against an agency commingling its file material to avoid disclosure of additional documents. *See Robbins Tire*, 437 U.S. at 229–30, 98 S.Ct. at 2321. If the Board satisfies that burden, however, the Board should be permitted to rely upon a generic determination of prejudice, and need not make a case-specific factual showing that disclosure of each document would actually prejudice an investigation. Courts may make a generalized determination that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'prejudice an investigation.' *See Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2324; *see also Wright v. Occupational Safety and Health Admin.*, 822 F.2d 642, 646 (7th Cir.1987); *Barney v. I.R.S.*, 618 F.2d 1268, 1273 (8th Cir.1980).

Judges RODOWSKY and WILNER have authorized me to state that they concur with the views expressed herein.

WILNER, Judge, concurring:

I agree entirely that the Circuit Court erred in dismissing appellant's complaint, filed under the Maryland Public Information Act, for disclosure of certain documents in the possession of the State Board of Dental Examiners. My concern with the Court's Opinion is two-fold. First, the Court holds that, because the Board failed to demonstrate that appellant's inspection of the documents would prejudice an investigation then being conducted by the Board, the Circuit Court abused its discretion in dismissing the complaint. I do not believe that, when the agency fails to establish that non-disclosure is permissible under § 10–618 of the State Government Article, there is any discretion involved. If the agency fails to sustain its burden of establishing a permissive non-disclosure, the

court must order disclosure. Second, to reach its ultimate conclusion, the Court gratuitously addresses a number of issues that need not be addressed in this case and that can best be left for another day.

This is really a simple case. The Board apparently received a complaint that, on April 16, 1997, Ms. Fioretti, a dental hygienist, had performed dental hygiene procedures in the office of Randall Ramin Yazhary, D.D.S., without on-site supervision by a licensed dentist. If true, that conduct *may* have been in violation of the Maryland Dentistry Act (title 4 of the Health Occupations Article).[1] On April 17—the day after the alleged misconduct—the Board sent Ms. Fioretti a letter informing her that it had received information, and therefore had reason to believe, that she had violated the law and ordering her, immediately, to cease any unsupervised practice. After reminding her that the unsupervised practice of dental hygiene could result in the suspension or revocation of her license, the Board, based solely on the undisclosed information that it had received, "require[d]" her to sign, date, and return a written agreement that she would henceforth practice only under the supervision of a licensed dentist.

Through counsel, Ms. Fioretti promptly requested a copy of any complaint that was filed "and all other appropriate documents." That letter, sent April 21, 1997, was apparently ignored by the Board, so a second request was mailed on April 28, seeking "the courtesy of a reply." On May 7, the Board responded that "[t]he case is currently under investigation" and that the request was denied. The Board cited, as the basis for its non-disclosure, State Government Article, § 10–

---

1.  Section 4–308 of the Health Occupations Article provides that a general license to practice dental hygiene authorizes the licensee to practice that occupation only under the supervision of a licensed dentist who is on the premises and available for consultation, and only in certain settings including a dental office. Section 4–308(d) allows the Board to waive the supervision requirement, however, under certain circumstances. There is nothing in this record to indicate whether, if Ms. Fioretti indeed performed dental hygiene services without on-site supervision by a licensed dentist, any of the circumstances allowing for a waiver might have existed.

618(f)(1)(i) and (ii) and § 10–618(2)(vi). Section 10–618(f)(1)(i) allows a custodian to deny the inspection of records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff. Why the Board cited that provision is unclear, as it is not any of those agencies.

Section 10–618(f)(1)(ii) provides that, *subject to § 10–618(f)(2)*, a custodian may deny inspection of "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose ... " The Board urged that the documents sought by Ms. Fioretti constituted part (or all) of an investigatory file compiled for a law enforcement or prosecution purpose, and the Court spends considerable effort addressing that question. That effort is quite unnecessary, however, for, even if the documents in question, whatever they are, fall within the ambit of that provision, to deny inspection, the Board must also satisfy § 10–618(f)(2). Section 10–618(f)(2)(vi)—the only part of § 10–618(f)(2) cited by the Board—permits a custodian to deny inspection by a person in interest "only to the extent that the inspection would ... (vi) prejudice an investigation." Ms. Fioretti is certainly a person in interest.

As the Court points out, when a proper request is made for the inspection of public records, the State agency seeking to deny disclosure has the burden of establishing a legally justifiable reason for the non-disclosure. Section 10–613 provides that, "[e]xcept as otherwise provided by law, a custodian shall permit a person ... to inspect any public record at any reasonable time," and § 10–623(b)(2)(i) expressly requires that, in any judicial proceeding to enforce compliance with the law, the agency "has the burden of sustaining a decision to deny inspection of a public record." In *Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 507, 474 A.2d 880, 887 (1984), we held that, in such a judicial proceeding, "the burden is on the public official denying the right to inspect to show that the requested records are within the scope of a statutory exemption."

The simple answer to this case is that the Board has made no such showing. We need not get into the thicket of what would or might have sufficed, for no evidentiary foundation whatever was produced to warrant non-disclosure. The Board's written motion to dismiss Ms. Fioretti's complaint asserted only that "[a]t this time, disclosure of records to the Plaintiff would prejudice the Board's pending investigation. If the Board determines, based on its investigation, that formal disciplinary action is appropriate in this case and issues charges, Plaintiff would, at that time, be entitled to inspection of the Board's investigatory file as permitted by law." In an accompanying memorandum, the Board repeated its view that "disclosure of the requested documents to plaintiff at this time would jeopardize and hinder an ongoing investigation" and that disclosure "may, for example, reveal the identity of potential witnesses in the case before Board representatives have an opportunity to interview the witnesses or other individuals who have relevant information." The Board asserted further, in its memorandum, that "[i]t is important to note that as the investigation is ongoing, no charges have been issued against Plaintiff and no disciplinary action has been proposed against Plaintiff's license."

Up to that point, the "case" against Ms. Fioretti consisted solely of information that the Board received that, on one day—April 16, 1997—Ms. Fioretti had practiced dental hygiene in Dr. Yazhary's office without the on-site supervision of a licensed dentist. That information was in the Board's hands by April 17 and was sufficient, in the Board's view, for it to order Ms. Fioretti to cease and desist any such activity and to sign a written statement agreeing to conduct herself in accordance with the law. There has never been any suggestion that Ms. Fioretti violated any other provision of the law or that her alleged practice without on-site supervision occurred at any time other than April 16 or at any place other than Dr. Yazhary's office. The motion and accompanying memorandum were filed on or about July 10, 1997—some three months after the Board made its first and last communication to Ms. Fioretti regarding the matter. No hearing was ever held on

the motion (or on the complaint itself).  On August 1, 1997, the court simply granted the motion and dismissed the complaint without assigning any reason.  It summarily denied a motion to reconsider on September 12, 1997, also without the benefit of a hearing.[2]  Other than the bald, unsupported statements contained in the Board's motion and memorandum, there is nothing—absolutely nothing—in this record to indicate what, if any, kind of investigation was ongoing, what kinds of records the Board had that might be relevant to any ongoing investigation, or how any documents or categories of documents might prejudice an investigation.[3]

An agency cannot satisfy its statutory burden of "sustaining a decision to deny inspection of a public record" by simply asserting that all of the records sought would prejudice an investigation, for, if it could do that, the Public Information Act would be meaningless.  That is where this case begins and where it should end.  If an agency's decision to deny inspection of a public record is challenged in court, the agency must produce persuasive evidence of some kind to establish that the requested documents are legally shielded—that they fall within one of the statutory exceptions to the general requirement of disclosure.  The nature and quantum of that evidence, and whether it should be subjected to *in camera* inspection by the court, may well depend on the circumstances, but we need not address the specifics of that in this case, as no evidence, of any kind, was produced by the Board.  I would hold that, even if the documents sought qualify as an investigatory file compiled for a law enforcement or prosecution purpose, within the

---

**2.**  As neither the Board nor Ms. Fioretti requested a hearing on either the motion to dismiss or the motion to reconsider, the court was not obliged to hold a hearing on either motion.  The problem, thus, is not specifically the lack of a hearing but the failure of the Board to establish a factual foundation for its assertion that disclosure would prejudice an on-going investigation.

**3.**  The Board continued to raise the prospect of prejudice to an ongoing investigation at oral argument in this Court, on June 9, 1998—14 months after it sent its one and only letter to Ms. Fioretti.  It gave us no more basis for that prospect than it gave the Circuit Court.

meaning of § 10–618(f)(1)(ii), the Board failed, as a matter of law, to sustain its burden of showing that disclosure of the documents would prejudice an investigation under § 10–618(f)(2)(vi). Given that failure, I would direct that the Circuit Court order the requested disclosure.

Judges RODOWSKY and RAKER have authorized me to state that they concur with the views expressed herein.